UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                                Case No. 14-05631-jtg

DANIEL C. RIEDY,                                              Chapter 13

                              Debtor.                          Hon. John T. Gregg

_____/

## MEMORANDUM DECISION REGARDING
## MOTION TO CONTINUE STAY

This matter comes before the court on a Motion to Continue the Stay [Dkt. No. 6] (the "Motion") filed by Daniel C. Riedy (the "Debtor") in the above-captioned case. For the reasons set forth below, the court shall grant the Motion.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G).

## BACKGROUND

*A.    Initial Bankruptcy Filing*

On October 23, 2012, the Debtor filed a voluntary petition for relief under Chapter 13 with this court entitled *In re Riedy*, Case No. 12-09337-jdg. The initial bankruptcy case was ultimately dismissed on November 14, 2013 because the Debtor committed a material default under his Chapter 13 plan by failing to make timely payments.

*B.    State Court Action by Bank*

In 2014, Eaton Federal Savings Bank (the "Bank") filed a complaint seeking to foreclose a mortgage granted by the Debtor to the Bank on certain real property located in Eaton County, Michigan (the "Mortgaged Realty"). At the time, the Debtor was in default of certain obligations under the mortgage and a related promissory note.[1]

On June 27, 2014, the Eaton County Circuit Court (the "State Court") entered a judgment granting the Bank's motion for summary disposition against the Debtor and a third party defendant (the "Judgment"). In its Judgment, the State Court found, among other things, that the Debtor was indebted to the Bank in the amount of $156,492.20. The State Court further authorized the Bank to foreclose on the Mortgaged Realty pursuant to the Michigan judicial foreclosure statute.

---

[1]    The mortgage and promissory note, as well as the Judgment (as defined below), were attached as exhibits to the Objection.

Finally, the Judgment provided that the Bank could not publish the notice of foreclosure for the Mortgaged Realty prior to June 1, 2014.

*C.      Second Bankruptcy Filing and Motion to Extend Stay*

On August 26, 2014 (the "Petition Date") and less than one year after the dismissal of Debtor's initial bankruptcy filing, the Debtor filed a second voluntary petition for relief under Chapter 13 with this court [Dkt. No. 1].  One day after filing the petition, the Debtor filed his Motion, which requested that this court continue the automatic stay beyond the thirty (30) day period set forth in section 362(c) of the Bankruptcy Code.  In his Motion, the Debtor posits that his financial position has changed since his initial bankruptcy, as he was able to reinstate his previously suspended/revoked liquor license and increase profitability at his restaurant by reducing employees, changing the menu, and offering additional catering services.  Approximately one week after the Petition Date, the Debtor filed a motion to extend the time to file his schedules, statement of financial affairs and proposed Chapter 13 plan [Dkt. No. 18], which the court granted on September 12, 2014 [Dkt. No. 23].

Shortly thereafter, the Bank filed an objection to the Motion [Dkt. No. 22] (the "Objection"), contending that the Debtor cannot overcome the presumption of a "lack of good faith" arising under section 362(c)(3)(C) for serial filers.  In its Objection, the Bank emphasizes that the Debtor has yet to file his schedules, statement of financial affairs, and any proposed Chapter 13 plan.[2]   As such, the Bank asserts that there is no evidence demonstrating a change in the Debtor's financial situation.  Rather, according to the Bank, the delay in filing documents related to the bankruptcy, coupled with the Debtor's request for an extension to pay the filing fee for this second bankruptcy case, are indicative of the Debtor's lack of good faith.[3]

At the evidentiary hearing before this court on September 16, 2014, the Debtor was the sole witness called to testify.  The parties did not introduce any documents into evidence at the hearing, but, as noted *supra* at p. 1, the Bank did attach to its Objection copies of a mortgage, a promissory note, and the Judgment.

## LEGAL STANDARD

Section 362(c)(3) of the Bankruptcy Code provides, in pertinent part, that if a single or joint case of an individual debtor was pending within the preceding one (1) year period but was dismissed, the automatic stay will automatically terminate (perhaps in some respects) thirty (30) days after the petition date, unless the court extends the stay after notice and a hearing completed within such period.  11 U.S.C. § 362(c)(3)(A) – (B).  Section 362(c)(3) also imposes a presumption that a latter case is not filed in "good faith to the creditors to be stayed."  11 U.S.C. § 362(c)(3)(C).[4] Such presumption is subject to rebuttal only by "clear and convincing evidence."  *Id.*  The clear

---

[2]      The Debtor filed his proposed plan, schedules and statement of financial affairs [Dkt. Nos. 26-27] on September 21, 2014, five days after the hearing on the Motion.

[3]      On August 27, 2014, the Clerk of the Court entered an order authorizing the Debtor to pay his filing fee in monthly installments [Dkt. No. 5].

[4]      The Debtor conceded at the hearing on the Motion that the presumption applies in this case.

and convincing standard has been defined as "the weight of proof that would place in the ultimate fact finder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *In re Baldassaro*, 338 B.R. 178, 188-89 (Bankr. D. N.H. 2006) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

"Good faith" is not defined in the Bankruptcy Code, but its meaning has been interpreted by the Sixth Circuit Court of Appeals in various contexts. *See, e.g.*, *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002) (Chapter 13 dismissal applying totality of circumstances); *Metro Employees Credit Union v. Okoreeh-Baah* (*In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988) (applying totality of circumstances to determine good faith as part of confirmation); *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 859 (6th Cir. 1988) (same); *see also In re Brown*, 293 B.R. 865, 870 (Bankr. W.D. Mich. 2003) (conversion from Chapter 7 to Chapter 13).

The Sixth Circuit has not addressed the standard to apply in the context of "lack of good faith" under section 362(c)(3). However, in determining whether a debtor has rebutted the presumption by showing good faith, other courts have applied a "totality of circumstances" test. *See*, *e.g.*, *In re Washington*, 443 B.R. 389, 395 (Bankr. D. S.C. 2011); *In re Havner*, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006); *but see In re Whitaker*, 341 B.R. 336, 345 (Bankr. S.D. Ga. 2006) (holding that section 362(c)(3) only requires substantial change in affairs of debtor which indicates, in Chapter 13, confirmed plan will be fully performed).

Accordingly, these courts have considered the following non-exhaustive list of factors: (i) the timing of the petition, (ii) how the debt arose, (iii) the debtor's motive, (iv) how the debtor's actions affected creditors, (v) why the debtor's case was dismissed, (vi) the likelihood that the debtor will have steady income throughout the case and will be able to fund a plan, and (vii) whether any party objects to the motion. *See In re Havner*, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006); *In re Baldassaro*, 338 B.R. 178, 188 (Bankr. D. N.H. 2006); *In re Galanis*, 334 B.R. 685, 693 (Bankr. D. Utah 2005); *see also In re Dowden*, 428 B.R. 894, 899-900 (Bankr. S.D. Ohio 2010) (applying twelve factor test used to determine if plan proposed in good faith).

In Chapter 13 cases, at least one commentator has suggested placing emphasis on (i) the reasons the previous plan failed, and (ii) the change in the debtor's circumstances that indicate the plan in the current case will be successful. *See In re Hall*, 2012 WL 5356019, at *1 (Bankr. E.D. Ky. Oct. 30, 2012) (citing 3 Collier on Bankruptcy ¶ 362.06 [4][b] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2014)).

## ANALYSIS

Based on the totality of the circumstances, this court finds, solely for purposes of section 362(c)(3), that the Debtor has established by clear and convincing evidence that the second bankruptcy case was filed in "good faith." In reaching such conclusion, the court finds the aforementioned factors developed by other courts to be instructive.

*A.      Testimony from the Debtor*

At the hearing on the Motion, counsel to the Debtor offered evidence in the form of testimony from the Debtor.  The Debtor testified as follows:

- The Debtor receives income from one source, "Riedy's Inc.", a corporation of which he is the sole shareholder.

- The Debtor was forced to file for bankruptcy in 2012 due to delinquent taxes.

- The Debtor's business suffered from the ban on smoking enacted in Michigan on May 1, 2010.

- Since 2010 the Debtor has converted the business into one driven by food sales and service in the restaurant, as opposed to service of alcoholic beverages in the bar.

- The Debtor could not satisfy his obligations under his plan in his initial Chapter 13 because the business lost its liquor license.  The business has since regained its liquor license.

- The Debtor was stricken with pancreatitis earlier this year and was hospitalized for 26 days, and could not work for more than 60 days.

- The Debtor has recovered from his ailment, and has improved his health dramatically.

- The Debtor believes that his improved health allows him to devote more time to the business, where he sometimes works from 7:30 a.m. to nearly 12:00 a.m.

- The Debtor has expanded the catering aspect of the business.

In sum, the Debtor testified that he believes his business is recovering, and that prospects for the future are promising.  In addition, the Debtor stated that his health has improved, which will allow him to devote more time to the business.  Taken as a whole, the court found the Debtor's testimony to be extremely credible.

*B.      Application of the Totality of the Circumstances Test*

*1.      Timing of the Petition*

As noted above, courts generally review various factors to determine whether a subsequent bankruptcy case has been filed in good faith based on the totality of the circumstances.  In the instant case and with respect to the first factor, the Debtor explained the reasons for dismissal of his initial bankruptcy and the delay in filing this current case.  While the period of time between dismissal of the initial case and the Petition Date was somewhat prolonged, the Debtor convincingly provided an explanation for the delay.  First, the Debtor's former attorney became ill and, seemingly, unavailable.  Thereafter, the Debtor testified he was confused with how to proceed

until he coordinated retention of replacement counsel with his former attorney.  Second, the Debtor was incapable of working for an extended period of time due to his illness, and is only now getting his affairs in order by, among other things, seeking to reorganize with assistance from the Bankruptcy Code.  Third, when questioned by the Bank regarding the circumstances leading to dismissal of his initial bankruptcy, the Debtor explained that he simply could not make the requisite payment under the plan and, upon the advice of counsel, did not contest dismissal.  Overall, this factor weighs in favor of extending the automatic stay.

### 2.    *How the Debt Arose*

With respect to the second factor, the Bank introduced copies of a promissory note, the mortgage for the Mortgaged Realty, and the Judgment.  Neither party further addressed this factor, other than perhaps the Debtor's references to tax liabilities which precipitated his initial bankruptcy filing.  Based on the Debtor's testimony, the Debtor simply could not satisfy his obligations after his business suffered from financial distress in 2010.  However, it is impossible for this court to determine the nature of any other debts of the Debtor, because the Debtor failed to file his schedules in advance of the hearing or otherwise discuss their likely contents during the hearing.  Although the court notes that the Debtor did file his schedules after the hearing, this court declines to admit into evidence documentation which has not been made available to an opposing party prior to a hearing.  To do so would be prejudicial to the rights of the opposing party, in this case, the Bank.  This factor, therefore, weighs against extending the automatic stay.

### 3.    *Debtor's Motive and Reasons for Dismissal*

The third and fifth factors, the Debtor's motive and the reasons for dismissal of the initial bankruptcy case, weigh heavily in favor of extending the automatic stay.  The court is mindful of the fact that the Debtor's debts to his creditors arose only as a result of a struggling business.  No allegation has been made that the Debtor engaged in any fraudulent or nefarious conduct.  Similarly, the Debtor's first bankruptcy case was dismissed due to his inability to make payments, and not as result of any improper conduct.

At the hearing, the Bank attempted to infer an ill motive on the part of the Debtor because he failed to remit payments to the Bank after his initial bankruptcy case was dismissed.  However, the Debtor explained that the Bank refused to accept payments that he attempted to tender.  It is unclear when these payments were tendered by the Debtor, but not accepted by the Bank.  Nonetheless, the court finds this testimony compelling, because it clearly demonstrates the Debtor's good faith attempts to honor, at least in part and to the extent possible, his obligations to creditors.  Importantly, the Bank offered no witness or other evidence to refute this testimony, or any other testimony for that matter.

The Bank further contended that the Debtor's bankruptcy was filed to stifle the foreclosure which, according to the Bank's counsel, was scheduled for September 11, 2014.  While the Judgment leads this court to surmise that a foreclosure might have been imminent, the court was not presented with any proof at the evidentiary hearing that the Debtor's bankruptcy was

precipitated by a foreclosure.[5]  The Bank had no witness to testify as to the foreclosure, nor did the Bank introduce into evidence a notice of foreclosure or similar document.  Instead, the Debtor testified that he was hospitalized and could not work for approximately two months.  Based on such testimony, the court concludes that the Debtor would likely have filed his bankruptcy sooner, if not for his illness.  Therefore, the court finds that the Debtor successfully rebutted any inference that the bankruptcy was filed on the eve of foreclosure solely for the purpose of halting the foreclosure.  In this case, the court believes this to be the second most important factor, and thus weights it accordingly.

### 4. Impact on Creditors and Objections to the Motion

The fourth and seventh factors, the impact on creditors and whether a party in interest has objected, clearly weigh in favor of the Bank.  After the initial bankruptcy case was dismissed, the Bank filed its foreclosure action in State Court.  The Bank relied on the dismissal, and no evidence was introduced that the Bank elected to proceed with foreclosure while it also negotiated with the Debtor.  *See In re Baldassaro*, 338 B.R. at 190.  This factor weighs against extending the automatic stay, although the court does not afford it much weight, as the filing of a bankruptcy petition and the imposition of the automatic stay will almost always prejudice creditors.

### 5. Funding of, and Performance Under, a Plan

The sixth factor, the Debtor's ability to fund and perform under a Chapter 13 plan, is arguably the most important factor.  At the hearing, the Debtor credibly testified regarding certain components of his Chapter 13 plan.  Specifically, the Debtor testified that, if necessary, he intends to sell his house in order to fund the plan.  In addition, the Debtor is prepared to pay the Chapter 13 trustee through electronic means to ensure the timely and continuous payments under the plan.  According to the Debtor, as of the date of the hearing on the Motion, he had already made two payments to the Chapter 13 trustee in advance of any confirmation hearing.[6]  Finally, the Debtor testified that he believes that he will be able to pay $1,000 per week pursuant to the plan, and of that amount, at least $1,000 per month will be paid as adequate protection to the Bank.

On cross-examination, the Bank questioned the Debtor's failure to file his plan, schedules, statement of financial affairs and related documents in advance of the hearing on the Motion.  This court was also concerned with the lack of such documents.  The Debtor testified that he thought such documents were either recently filed or would soon be after finalization by his accountant and his current legal counsel.  Moreover, the Debtor withstood such questioning and credibly explained that his business has experienced an increase in sales, thereby providing the Debtor with additional resources from which to fund a plan of reorganization.  The Debtor again highlighted that his business had been resuscitated through refocused efforts on food service and catering.  The

---

[5]     Clearly, the Debtor filed his second bankruptcy case due, in part, to the debt owed to the Bank.  However, it has not been alleged that this case is essentially nothing more than a two party dispute.

[6]     In its Objection, the Bank argued that the Debtor's request to pay his filing fee in installments is indicative of his inability to fund plan payments.  This court was likewise concerned.  However, the Debtor refuted any such inference, however, when he testified that he had already made two payments to the Chapter 13 trustee.

Bank offered no evidence to refute the Debtor's testimony or otherwise call into question the Debtor's ability to present a viable reorganization strategy.[7]

While it may be somewhat difficult for a court to determine the potential success of a plan of reorganization in the absence of the plan itself or schedules detailing assets, liabilities, expenses and income, it is not impossible. In light of the Debtor's credible and convincing testimony, the court finds that the Debtor has narrowly satisfied his burden of presenting clear and convincing evidence with respect to his ability to fund, and perform under, a plan. Ideally, the Debtor would have introduced not only draft schedules and a draft of his plan, but also records and projections for the corporation from which the Debtor's income is generated. However, in this case and *absent any evidence from the Bank to the contrary*, the court finds, at least on a preliminary basis, that the Debtor has sufficiently demonstrated through testimony that his plan is more than likely to be successful.

## CONCLUSION

Based on the totality of the circumstances derived from the evidence presented, the court finds that the Debtor has satisfied his burden of proof by clear and convincing evidence that the case was filed in good faith. The court will therefore extend the automatic stay with respect to all creditors of the Debtor. The court notes that although the Motion is being granted, the automatic stay would likely have been extended to the Mortgaged Realty regardless of the outcome of this contested matter. *See In re Robinson*, 427 B.R. 412, 414 (Bankr. W.D. Mich. 2010) (Dales, B.J.). As such, even if the court had denied the Motion, it is unlikely that the Bank would have been able to continue its foreclosure of the Mortgaged Realty.

For the foregoing reasons, the Motion is granted.[8] The court will prepare an order consistent with this Memorandum Decision.

---

[7] The Bank does not appear to have conducted any discovery prior to the hearing, nor did it request additional time to conduct discovery. *See* Fed. R. Bankr. P. 9014(c) (parties may engage in discovery pursuant to Fed. R. Bankr. P. 7026-7037 in contested matters). While the timeframe within which to conduct discovery is obviously abbreviated due to the temporal requirements of section 362(c), a party may nonetheless engage in, or request from the court in the absence of cooperation, a condensed period of time for discovery. Moreover, at the hearing, the Bank did not cross examine the Debtor regarding his financial condition, including the contents of his proposed plan, schedules, or statement of financial affairs.

[8] Nothing contained in this Memorandum Decision should be construed as a finding of fact or conclusion of law with respect to feasibility or any other aspect of the Debtor's proposed plan. *See also In re Tomasini*, 339 B.R. 773, 782 (Bankr. D. Utah 2006) (standard under section 362(c)(3) is different than standard under section 1325(a)(7)). Nothing contained herein shall preclude any party, including the Bank, from filing a motion for relief from the automatic stay under section 362(d) or seeking any other form of relief in this case.

**Signed: September 24, 2014**





John T. Gregg
United States Bankruptcy Judge